**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 11, 2023**

**Christopher M. Wolpert**
**Clerk of Court**

JABARI J. JOHNSON,

     Plaintiff - Appellant,

v.

REYNA; WARGO; KORIN,

     Defendants - Appellees.

No. 21-1371

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:20-CV-00459-PAB-MEH)**
_____

Kathrina Szymborski (Easha Anand, Roderick & Solange MacArthur Justice Center, San Francisco, California, David F. Oyer & Elizabeth A. Bixby on the briefs), of Roderick & Solange MacArthur Justice Center, Washington, D.C., for Plaintiff-Appellant.

Cole J. Woodward, Assistant Attorney General (Philip J. Weiser, Colorado Attorney General and Joshua G. Urqhuart, Assistant Attorney General, Colorado Department of Law, on the briefs), Denver, Colorado, for Defendant-Appellee.

_____

Before **TYMKOVICH**, **SEYMOUR**, and **PHILLIPS**, Circuit Judges.
_____

**PHILLIPS**, Circuit Judge.
_____

     The Prison Litigation Reform Act (PLRA) requires a prisoner to show a

physical injury to bring a civil action for mental or emotional injury suffered in

custody. 42 U.S.C. § 1997e(e). Appellant Jabari Johnson, who proceeded pro se in the district court but has counsel on appeal, alleged in a 42 U.S.C. § 1983 complaint against three prison officers that the officers slammed him on his untreated fractured jaw, stepped on his untreated injured foot, caused him excruciating pain, and inflicted further injury on his jaw and foot to the point that he needed physical therapy and surgery. He also alleged that the incident caused him depression and anxiety. The district court ruled that Johnson failed to allege a sufficient physical injury under § 1997e(e) to claim mental or emotional damages and dismissed his individual-capacity claims against the officers with prejudice.

But Johnson's allegations satisfy § 1997e(e)'s physical-injury requirement. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse in part, affirm in part, and remand.

## BACKGROUND

### I.    Factual Background

Johnson, a state prisoner in Colorado, is a prolific pro se litigant. By his own count, he has brought over sixty civil suits against prison officials under the Eighth and Fourteenth Amendments. Except for those complaints that are still pending, all of Johnson's complaints have been dismissed on grounds that he failed to prosecute or failed to comply with court orders or procedural rules.

On May 3, 2018, prison staff escorted Johnson to the office of the prison

case manager, Humphreys, to retrieve copies of Johnson's prior grievances.[1] Humphreys questioned Johnson about his upcoming lawsuits. Johnson declined to speak about the lawsuits but instead asked for his earlier grievances so he could continue the grievance process. Humphreys became irate and ordered Johnson to leave if he wouldn't answer his questions. Johnson agreed to leave, and Humphreys ordered that Johnson "cuff up." App. at 13. During this encounter, Johnson insisted he had done nothing wrong and posed no threat.

Moments later, three prison officers arrived to escort Johnson back to his cell: Sergeant Joaquin Reyna, Lieutenant Brett Corbin,[2] and Wargo.[3] Though Johnson was already handcuffed, the officers also shackled his legs. In the hallway, Johnson complained that the restraints were excessive and violated his constitutional rights. In response, Reyna "placed his foot on [Johnson's] untreated right foot." *Id.* at 14. Johnson had suffered an earlier injury to his right foot, so Johnson pleaded with Reyna to remove his foot and claimed that

---

[1] To describe the May 2018 incident and its consequences, we rely on the facts Johnson alleged in his § 1983 complaint.

[2] Johnson misspelled Corbin's name in the complaint as "Korin." We use the spelling provided by Corbin's counsel.

[3] As the district court noted, Wargo's full name and identity are uncertain. Wargo's motion to dismiss refers to "Officer Jessica Wargo" and uses "she" and "her" as pronouns. App. at 69–70. But Reyna and Corbin's motion to dismiss (authored by the same counsel) and the officers' collective appellate brief refer to "Sergeant Matthew Wargo" and use "he" and "him" as pronouns. *Id.* at 36; Resp. Br. 1. Given this confusion, we refer to this defendant only as "Wargo."

Reyna was "knowingly inflicting pain." *Id.* According to Johnson, Reyna refused to remove his foot and smiled "sadistic[ally]" at him. *Id.*

Once Johnson was both handcuffed and shackled, Reyna, Wargo, and Corbin escorted him back to his cell, pushing him to walk faster despite the shackles around his ankles. Johnson gingerly placed one foot on the stairs at a time to avoid any further pain. Suddenly, the officers slammed Johnson "on his untreated fractured jaw." *Id*. Johnson told the officers he was in "excruciating pain" and needed immediate medical treatment. *Id.*

Rather than listening to Johnson's pleas, the three officers dragged Johnson fifteen to twenty feet down the hallway. Wargo applied excessive pressure to Johnson's feet through the ankle shackles, and Johnson again stated that he was in pain, "requesting Wargo [to] refrain from applying any further pressure." *Id.* Wargo responded by telling Johnson to "shut the [expletive] up" and stop "running his mouth." *Id*. The officers then placed Johnson in a restraint chair.

Johnson claims that Wargo and the other officers slammed him to retaliate against him for filing grievances. One of Johnson's fellow inmates, Darian Weaver, witnessed the officers' rough handling of Johnson. Weaver corroborated Johnson's story to prison officials, confirming that Johnson hadn't resisted the officers' escort or initiated the violent incident.

The incident exacerbated Johnson's preexisting injuries and caused him to need medical treatment. In February 2019, a prison doctor scheduled

4

physical therapy for Johnson, presumably to heal his injured foot. And in June 2019, the chief prison dentist told Johnson he "need[ed] to visit a facial and oral surgeon regarding [his] misaligned[,] concaved jaw." *Id.* at 16. Johnson also suffered major depression and anxiety because of the May 2018 incident.

## II.    Procedural Background

Johnson sued Reyna, Wargo, and Corbin under § 1983 for Eighth and Fourteenth Amendment violations, seeking hundreds of thousands of dollars in punitive and compensatory damages from each defendant. Reyna and Corbin moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Johnson had alleged only de minimis physical injuries, so the PLRA's physical-injury requirement in 42 U.S.C. § 1997e(e) barred his claims for mental or emotional injuries. Reyna and Corbin claimed that Johnson had failed to allege an additional physical injury from their actions, so he failed to state a claim. Though they acknowledged that Johnson had complained of physical pain during the incident, they argued that physical pain alone is a "de minimis injury that may be characterized as a mental or emotional injury." *Id.* at 41.

Reyna and Corbin also argued that the Eleventh Amendment barred the court from exercising jurisdiction over Johnson's claims for money damages to the extent he sought "monetary damages from the State or its employees acting in their official capacities." *Id.* at 42–44.

5

Johnson responded, insisting that he "did suffer further injury to [his] right foot and jaw." *Id.* at 53. He claimed that a prison doctor had later ordered surgery for his jaw and foot and additional physical therapy to help him walk correctly.

A magistrate judge recommended granting Reyna and Corbin's motion to dismiss under both Rules 12(b)(1) and 12(b)(6). *Johnson v. Reyna* (*Johnson I*), No. 20-cv-00459-PAB-MEH, 2020 WL 11578162, at *5 (D. Colo. Nov. 23, 2020). The magistrate judge agreed with the officers that the Eleventh Amendment barred Johnson's suit for money damages against them in their official capacities, so the court lacked subject-matter jurisdiction over the official-capacity claims. *Id.* at *3. The magistrate judge also agreed with the officers that the PLRA's physical-injury requirement barred Johnson's individual-capacity claims because he had alleged only physical pain without additional injury, so he failed to state a claim for relief. *Id.* at *4. And the magistrate judge recommended denying Johnson leave to amend his individual-capacity claims because he was an experienced pro se litigant. *Id.* at *4–5.

Johnson timely objected to the magistrate judge's report and recommendation on Reyna and Corbin's motion to dismiss. Johnson objected that the magistrate judge was "wrong" in applying the PLRA's physical-injury requirement to bar his claim because his complaint "indicated . . . that the defendants assaulted [him] causing *further* injury and pain to [his] jaw and foot." App. at 66 (emphasis added). Johnson also stated that he "ha[d] no need

6

to amend, yet [he] did file a supplemental complaint adding all the incidents that have occur[r]ed after this suit was filed." *Id.* at 67. Johnson argued that his complaint wasn't defective.

Two months after Reyna and Corbin's motion to dismiss, Wargo also moved to dismiss under Rules 12(b)(1) and 12(b)(6). Wargo's motion to dismiss echoed Reyna and Corbin's motion nearly verbatim. Johnson responded by reiterating his earlier contentions to Reyna and Corbin's motion to dismiss.

Using nearly identical language to the first report and recommendation, the magistrate judge recommended granting Wargo's motion to dismiss under Rules 12(b)(1) and 12(b)(6), relying on the same reasoning that the Eleventh Amendment barred Johnson's official-capacity suit and that the PLRA barred Johnson's individual-capacity claims. *Johnson v. Reyna* (*Johnson II*), No. 20-cv-00459-PAB-MEH, 2021 WL 852287, at *3–5 (D. Colo. Jan. 25, 2021). The magistrate judge also recommended denying Johnson leave to amend his complaint against Wargo. *Id.* at *4–5.

Johnson didn't object to the magistrate judge's recommendation to dismiss his claims against Wargo. *Johnson v. Reyna* (*Johnson III*), No. 20-cv-00459, 2021 WL 848755, at *1 (D. Colo. Mar. 4, 2021). So the district court accepted the magistrate judge's recommendations in full and dismissed

Johnson's individual-capacity claim against Wargo with prejudice and his official-capacity claim against Wargo without prejudice. *Id.*

The district court also accepted the magistrate judge's recommendation to dismiss Johnson's official-capacity claims against Reyna and Corbin without prejudice because the Eleventh Amendment barred the court from exercising subject-matter jurisdiction. *Johnson v. Reyna* (*Johnson IV*), No. 20-cv-00459-PAB-MEH, 2021 WL 4305009, at *3–4 (D. Colo. Sept. 22, 2021). The court overruled Johnson's objections to the magistrate judge's report and recommendation on his individual-capacity claims against Reyna and Corbin, reasoning that Johnson had failed to allege a sufficient physical injury to satisfy the PLRA's physical-injury requirement. *Id.* at *4–5. The court also refused to grant Johnson leave to amend and dismissed his individual-capacity claims against Reyna and Corbin with prejudice. *Id.* at *5–6.

Johnson timely filed his appeal under the prisoner-mailbox rule. *See* Fed. R. App. P. 4(c)(1)(A). On appeal, Johnson challenges only the district court's dismissal with prejudice of his individual-capacity suits.

## STANDARD OF REVIEW

We review de novo a district court's grant of a 12(b)(6) motion to dismiss. *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 811 (10th Cir. 2021) (citing *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014)). We accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to Johnson, the

8

non-moving party. *Id.* (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006)). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

## DISCUSSION

Much of this appeal depends on the proper construction of Johnson's complaint. Johnson raises substantive arguments about the scope of the PLRA's physical-injury requirement (that both a de minimis injury and pain alone will satisfy § 1997e(e)), and the officers counter that Johnson has waived these arguments. But the facts of Johnson's case don't require us to reach these arguments.

We conclude that Johnson has adequately pleaded a serious physical injury in his complaint that satisfies § 1997e(e)'s physical-injury requirement, so we need not address whether a de minimis injury or physical pain alone would satisfy § 1997e(e) or whether Johnson properly preserved these arguments.

But we still must address whether, on remand, Johnson can pursue his claims against all three officers. Because Johnson failed to timely object to the magistrate judge's report and recommendation on Wargo's motion to dismiss,

9

and no exception to the firm-waiver rule applies, Johnson has waived his claim against Wargo. On remand, Johnson can pursue his claims only against Reyna and Corbin.

I.      **Construing Johnson's Complaint**

A.      **Our Rule of Liberal Construction**

We construe pro se plaintiffs' pleadings liberally; this is a "well-settled principle" in our circuit. *Reynoldson v. Shillinger*, 907 F.2d 124, 125 (10th Cir. 1990) (citing *Meade v. Grubbs*, 841 F.2d 1512, 1526 (10th Cir. 1988)). If we "can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail," we should do so. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In practicing leniency, we will often excuse pro se plaintiffs' "failure to cite proper legal authority," "confusion of various legal theories," "poor syntax and sentence construction," and "unfamiliarity with pleading requirements." *Id.* We consistently construe pro se prisoners' pleadings liberally even if they frequently file lawsuits in the federal courts. *E.g.*, *Smith v. Veterans Admin.*, 636 F.3d 1306, 1308, 1310 (10th Cir. 2011); *Childs v. Miller*, 713 F.3d 1262, 1264–65 (10th Cir. 2013); *Kinnell v. Graves*, 265 F.3d 1125, 1127 & n.1 (10th Cir. 2001).

The officers argue that because Johnson is a "seasoned and prolific litigant," we should deny him the leeway that we would generally afford to pro se plaintiffs. Resp. Br. 14. But we decline to apply a more stringent standard to Johnson simply because he has filed dozens of lawsuits. We agree with

10

Johnson's appellate counsel that "filing many lawsuits as an incarcerated *pro se* litigant is no substitute for years of law school, access to legal research databases, and the like." Reply Br. 28. Nearly all of Johnson's previous complaints were later dismissed for failure to prosecute or procedural missteps. That Johnson knows how to file complaints doesn't mean that he knows how to litigate them like a licensed attorney. We will continue to construe all pro se plaintiffs' pleadings liberally, even if they come from frequent filers like Johnson.

**B.     Our Liberal Construction of Johnson's Complaint**

The district court construed Johnson's complaint as alleging only pain, without an additional or exacerbated physical injury. *Johnson I*, 2020 WL 11578162, at *4; *Johnson II*, 2021 WL 852287, at *4; *Johnson IV*, 2021 WL 4305009, at *4–5. But when we liberally construe Johnson's complaint, we find that he alleged that the officers caused him intense physical pain *and* exacerbated his preexisting injuries, to the point he needed medical treatment.

During the assault, Johnson told the officers they were causing him "excruciating pain." App. at 14. And he immediately requested medical treatment as soon as they slammed him on his fractured jaw. He also alleged that he needed physical therapy and oral surgery a year after the May 2018 incident. And he described that the officers inflicted "pain *and injury* to [his] jaw and foot," which "require[d] *further* treatment that [he] [had] not received from [May 3, 2018] to [the] current date." *Id.* at 17 (emphases added). We read

11

Johnson's complaint's allegations as stating that the officers' conduct not only caused him excruciating pain but also exacerbated the injuries on his jaw and foot that required surgery and physical therapy. We also read Johnson's complaint as seeking damages for both physical injuries (i.e., his exacerbated jaw and foot injuries) and mental or emotional injuries (i.e., his anxiety and depression that resulted from the incident). The district court improperly construed Johnson's complaint by overlooking his plain-language allegations of pain and injury that required medical treatment.

The district court also suggested that Johnson didn't properly preserve a specific objection to the magistrate judge's report and recommendation to dismiss his claims against Reyna and Corbin. *See Johnson IV*, 2021 WL 4305009, at *5. We disagree. Johnson objected to the magistrate judge's finding that he didn't allege a sufficient physical injury by explaining that the defendants caused him "*further* injury and pain to [his] jaw and foot." App. at 66 (emphasis added). Again, the district court failed to liberally construe Johnson's pleadings. A plain reading of his objections to Reyna and Corbin's motion to dismiss reveals that he properly preserved his argument that they inflicted additional injury.

## II.   The PLRA's Physical-Injury Requirement

Next, we turn to whether Johnson's allegations, when properly construed, satisfy § 1997e(e)'s physical-injury requirement so that he can recover for mental or emotional injuries. Section 1997e(e) of the PLRA provides that "[n]o

12

federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The district court ruled that any physical injuries Johnson suffered were de minimis and that § 1997e(e) requires more than a de minimis physical injury for a plaintiff to recover for mental or emotional injuries. *Johnson I*, 2020 WL 11578162, at *4; *Johnson II*, 2021 WL 852287, at *4; *Johnson III*, 2021 WL 848755, at *1; *Johnson IV*, 2021 WL 4305009, at *4–5. We disagree with the district court's rulings that Johnson's injuries were de minimis.

On its face, § 1997e(e) requires only a "physical injury" without a set threshold of degree or severity. But so far, all seven circuits to address the issue have required plaintiffs to show more than a de minimis physical injury to recover for a mental or emotional injury. *Siglar v. Hightower*, 112 F.3d 191, 193–94 (5th Cir. 1997); *Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999); *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002); *Mitchell v. Horn*, 318 F.3d 523, 535–36 (3d Cir. 2003); *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) (collecting cases); *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (citations omitted); *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018) (citation omitted).

Courts that require more than a de minimis injury to satisfy § 1997e(e)'s physical-injury requirement look to the duration and intensity of the injury and

13

whether the plaintiff required medical treatment to decide whether the injury is more than de minimis. *See, e.g.*, *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). These courts consider some injuries de minimis, such as "a sore, bruised ear lasting for three days," *Siglar*, 112 F.3d at 193, or a few days of an upset stomach, minor cuts, and itchiness, *Wallace v. Coffee County*, 852 F. App'x 871, 878 (6th Cir. 2021) (collecting cases). And they consider as de minimis injuries some ailments like headaches, cramps, nosebleeds, dizziness, and weight loss. *McAdoo*, 899 F.3d at 525–26 (citations omitted). But when an injury lasts longer, causes more pain, and requires medical treatment, courts are more likely to find that the physical injury supports a claim for mental or emotional injuries under § 1997e(e). *See Gomez*, 163 F.3d at 924. For example, in *Gomez*, the Fifth Circuit held that the plaintiff suffered more than a de minimis injury when he endured "cuts, scrapes, [and] contusions to the face, head, and body" that required medical treatment after prison officers kicked and punched him for about five minutes. *Id.* at 924–25.

When we properly construe Johnson's complaint as alleging both intense physical pain and exacerbated injuries that required medical treatment, we conclude that Johnson has alleged a serious injury that satisfies § 1997e(e)'s physical-injury requirement, even under the more stringent standard recognized in other circuits.[4] Johnson immediately requested medical treatment, his

---

[4] At oral argument, the officers' counsel acknowledged that Johnson could meet § 1997e(e)'s physical-injury requirement by alleging that he needed

exacerbated injuries persisted into the next calendar year, and he claimed that the pain was "excruciating" and made it difficult for him to walk. App. at 14. *See Gomez*, 163 F.3d at 924 (considering need for medical treatment, duration, and intensity as part of § 1997e(e) analysis).

The parties urge us to decide whether a de minimis injury satisfies § 1997e(e)'s physical-injury requirement and whether pain alone is enough to show a physical injury. But when we properly construe his complaint, we see that Johnson has alleged a serious physical injury beyond pain alone that would satisfy § 1997e(e) even under the more stringent standard recognized by other courts. So we won't decide today whether a de minimis injury or physical pain alone can satisfy § 1997e(e).

Far from the minor ailments and transient aches that other circuits have found de minimis, Johnson alleged an intense, prolonged, exacerbated injury that still required medical treatment a year later. We hold that Johnson satisfied the physical-injury requirement of § 1997e(e), so he may pursue a claim for mental or emotional injuries in addition to his physical injuries. The district court erred in dismissing Johnson's individual-capacity claims against Reyna and Corbin for failure to state a claim.[5]

---

immediate medical treatment for his broken jaw. The officers' counsel also suggested that Johnson could satisfy the physical-injury requirement by alleging that the officers' actions exacerbated his broken jaw.

[5] On appeal, Johnson argues that even if he doesn't satisfy § 1997e(e)'s physical-injury requirement to recover damages for his mental and emotional

### III. Johnson's Suit Against Wargo

We also must address whether Johnson can pursue his § 1983 claims against Wargo on remand. The officers argue that the firm-waiver rule should bar Johnson from appealing his individual-capacity suit against Wargo because he didn't timely object to the magistrate judge's report and recommendation for Wargo's motion to dismiss. Johnson argues that we should apply the interests-of-justice exception to the firm-waiver rule.

The magistrate judge issued nearly identical reports and recommendations to dismiss Johnson's suits against Reyna, Wargo, and Corbin. *Compare Johnson I*, 2020 WL 11578162, *with Johnson II*, 2021 WL 852287. Johnson timely objected to the magistrate judge's first report and recommendation for his suit against Reyna and Corbin, but he didn't object to the magistrate judge's second report and recommendation for his suit against Wargo. *Johnson III*, 2021 WL 848755, at *1. We recognize a firm-waiver rule: "[T]he failure to make timely objection to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). And we apply the firm-waiver rule to pro se litigants, "provided they were informed of the time

---

injuries, he is still eligible for other damages, including punitive and nominal damages. The officers argue that Johnson waived his nominal-damages argument by not raising it in the district court. Because we hold that Johnson's allegations satisfy § 1997e(e)'s physical-injury requirement, we need not address the nominal-damages issue.

period for objecting and the consequences of failing to object."[6] *Wardell v. Duncan*, 470 F.3d 954, 958 (10th Cir. 2006) (citing *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119 (10th Cir. 2005)).

But we need not apply the firm-waiver rule "when the interests of justice so dictate." *Moore*, 950 F.2d at 659 (citing *Thomas v. Arn*, 474 U.S. 140, 155 (1985)). To determine whether this exception applies, we consider three factors: "[1] a *pro se* litigant's effort to comply, [2] the force and plausibility of the explanation for his failure to comply, and [3] the importance of the issues raised." *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010) (alterations in original) (quoting *Morales-Fernandez*, 418 F.3d at 1120). Our interests-of-justice exception "is similar to reviewing for plain error."[7] *Morales-Fernandez*, 418 F.3d at 1120.

Johnson argues that he tried to comply with the timely-objection rule by objecting to the first report and recommendation for Reyna and Corbin's motion to dismiss, which was nearly identical to the later report and

---

[6] The magistrate judge warned Johnson about the time to object and the consequences of failing to timely object. *Johnson II*, 2021 WL 852287, at *5 n.3.

[7] Plain error is another exception to the firm-waiver rule. *See Wardell*, 470 F.3d at 958. But Johnson doesn't argue that plain error applies, so we need not consider it. *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . surely marks the end of the road for an argument for reversal not first presented to the district court." (citing *McKissick v. Yuen*, 618 F.3d 1177, 1189 (10th Cir. 2010))).

recommendation for Wargo's motion to dismiss. And he explains his failure to comply by stating that he didn't know "he was required to file two identical sets of objections." Opening Br. 38. On the other hand, the officers urge us to reject Johnson's explanation and weigh the first two factors against him because he is a frequent filer.

In at least one case, we have weighed a pro se plaintiff's litigiousness in his favor on the first two interests-of-justice factors: (1) the plaintiff's effort to comply, and (2) the plausibility of the plaintiff's explanation for failure to comply. *See Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004) (crediting a plaintiff's explanation for his failure to comply because he was a "fairly tenacious litigant"). So we won't hold Johnson's frequent-filer status against him in evaluating the first two factors. But Johnson's interests-of-justice argument still fails.

In *Wirsching*, the plaintiff explained that he couldn't timely object because he never received the magistrate judge's report and recommendation. *Id.* We credited his explanation because his failure to timely object was inconsistent with his tenacity in the lawsuit. *Id.* Similarly, in *Casanova* we found that the first two interests-of-justice factors weighed in the plaintiff's favor when he didn't receive the magistrate judge's report, when he notified the court about a mail-delivery delay in the prison, when he followed up with the district-court clerk's office about his case, and when medical procedures also prevented him from timely objecting. 595 F.3d at 1124. Unlike the plaintiffs in

18

*Wirsching* and *Casanova*, not only did Johnson receive the report and recommendation for Wargo's motion to dismiss, but he also requested and received a one-month extension in which to object. *Johnson III*, 2021 WL 848755, at *1. Johnson's request for an extension reflects his understanding that he needed to object to the second report and recommendation for Wargo's motion to dismiss, so the first two interests-of-justice factors weigh against him.

The third factor—the importance of the issues raised—also weighs against Johnson. In *Casanova*, we found that the third factor weighed in the plaintiff's favor when his injuries required immediate hospitalization, and prison officials defied his doctor's orders. 595 F.3d at 1124. Though Johnson alleges that Wargo caused him serious injuries that required physical therapy and surgery almost a year later, he doesn't allege injuries that required immediate hospitalization. And on remand, Johnson can still pursue his Eighth Amendment claims against Reyna and Corbin, both of whom Johnson alleges contributed significantly to exacerbating his physical, mental, and emotional injuries.

We hold that the firm-waiver rule bars Johnson's appeal against Wargo, and no exception applies.

**CONCLUSION**

We affirm the district court's dismissal of Johnson's § 1983 complaint against Wargo. But we reverse the district court's dismissal of Johnson's

19

§ 1983 complaint against Reyna and Corbin and remand for further

proceedings.